UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

DILLARD GROUP OF TEXAS, LTD.,   )
a Texas Limited Partnership,   )
   )
     Plaintiff,   )
   )
v.   )   Case No. CIV-19-892-G
   )
MER HOLDING COMPANY, INC.,   )
an Oklahoma Corporation, f/k/a   )
MILLER EQUIPMENT & REPAIR,   )
INC. et al.,   )
   )
   Defendants.   )

## OPINION AND ORDER

Before the Court are the Motions for Partial Summary Judgment filed by Plaintiff Dillard Group of Texas, Ltd., Defendant MROC Holdings, LLC, Defendant WWS Holding Company, Inc., and Defendant MER Holding Company, Inc. (Doc. Nos. 62, 63, 64, 65), and the Motions for Summary Judgment filed by Defendants Applied Industrial Technologies, Inc., Jaron Miller, Joshua Miller, and Leslie Miller (Doc. Nos. 58, 59, 60, 61). The parties have submitted Responses (Doc. Nos. 66-73) and Replies (Doc. Nos. 74-80).

    I.   MATERIAL FACTS[1]

This matter involves the provision of marketing services by Plaintiff in relation to the sale of certain Defendant entities. Defendants Jaron Miller, Joshua Miller, and Leslie Miller (collectively, the "Miller Family Defendants") are the owners, either individually or

---

[1] Facts relied upon are uncontroverted or, where genuinely disputed, identified as such and viewed in the light most favorable to the nonmoving party.

collectively, of Defendants MER Holding Company, Inc. f/k/a Miller Equipment & Repair, Inc. ("MER"), WWS Holding Company, Inc. f/k/a Woodward Steel, Inc. ("WWS"), and MROC Holdings, LLC f/k/a Milroc Distribution, LLC ("MROC") (collectively, the "Miller Business Defendants").  Def. Jaron Miller's Mot. Ex. 1 (Doc. No. 59-1) at 2; *id.* Ex. 5 (Doc. No. 59-5) at 2; *id.* Ex. 7 (Doc. No. 59-7) at 2.

On July 29, 2014, Plaintiff's representatives Max Dillard and Stuart Hayashi[2] met with MER founder Jackie Miller and the Miller Family Defendants.  Def. Jaron Miller's Mot. Ex. 10 (Doc. No. 59-10) at 2; *id.* Ex. 11 (Doc. No. 59-11) at 2.  The parties dispute whether Jackie Miller and the Miller Family Defendants verbally instructed Plaintiff at this meeting to market and sell all their business entities or solely MER.  *Compare* Pl.'s Resp. (Doc. No. 68) at 10 (citing Mr. Hayashi's deposition testimony (Pl.'s Resp. Ex. 13 (Doc. No. 68-13)): "Their desire that was communicated to us was to sell everything.  Was to sell Woodward Steel, Miller repair and service, the supply store, everything.  Market all the companies together and sell it."; "Jackie, for certain [said that], and I think it was the sentiment of everyone in the room that that be the case."; "My recollection is that Jackie looked around and everybody said yes, nodded their heads, absolutely."), *with* Def. Jaron Miller's Mot. (Doc. No. 59) at 11-12 (citing Jaron Miller's deposition testimony that the parties "never discussed" an arrangement with WWS or MROC).[3]

---

[2] The parties do not state what positions Max Dillard and Stuart Hayashi held with Plaintiff, and the evidentiary record does not appear to contain this information.  The context suggests that Max Dillard is Plaintiff's owner, and no party disputes his authority to enter into contracts on Plaintiff's behalf.

[3] The record indicates that Plaintiff interpreted the Miller business structure as having four "divisions" or "standalone businesses," defined in their 2014 marketing material as "Miller Oilfield Equipment Repair," "Miller Oilfield Supply," "Woodward Steel," and "Industrial

At the meeting, a Letter Agreement—which Mr. Dillard had prepared prior to the meeting—was signed by Mr. Dillard on behalf of Plaintiff and by Jaron Miller on behalf of MER.  The Letter Agreement constitutes the only written agreement between Plaintiff and any Defendant.  *See* Def. Jaron Miller's Mot. Ex. 9 (Doc. No. 59-9) at 1-3; *id.* Ex. 10, at 31.  The Agreement provides that Plaintiff would serve as the "exclusive representative of [MER] in connection with the sale of MER."  Def. Jaron Miller's Mot. Ex. 9, at 1.  Plaintiff would "analyze [MER] from a financial and operational point of view," "prepare a Descriptive Offering Memorandum on the Company, assist in developing an acquisition structure," and "work with the Company in all areas necessary to move aggressively toward closing a transaction."  *Id.*  Regarding compensation, the Letter Agreement provides that Plaintiff would receive a non-contingent fee of $25,000 up front,[4] which upon the closing of any sale would be credited against a contingent fee of five percent of the "Transaction Value."  *Id.* at 2.  The Letter Agreement further specifies that "if a transaction involving a third party contacted by [Plaintiff] on [MER's] behalf or that contacted [MER] directly

_____

Trailer Parts, Farm & Ranch Supply," and defined in their 2017 marketing material as "Woodward Steel & Distribution," "MilRoc Distribution: Oilfield Supply," "Miller Oilfield Equipment Repair," and "Woodward Steel Fabrication Products, Industrial Trailer Parts and Consumables."  *See* Def. Jaron Miller's Mot. Ex. 14 (Doc. No. 59-14) at 5; *Id.* Ex. 15 (Doc. No. 59-15) at 5.  Mr. Hayashi testified that he believed certain divisions were "subsidiaries of each other," and that MER was "the handle [the Millers] use[d] to call the overall company."  *Id.* Ex. 11, at 22; Pl.'s Resp. Ex. 13 (Doc. No. 68-13) at 14.  Mr. Hayashi further testified that he was not aware that MER and WWS were separate legal entities until the parties' dispute arose.  Pl.'s Resp. Ex. 13, at 14.  Mr. Dillard's testimony similarly indicates that he understood there to be more than one division but did not ask whether WWS was a separate legal entity.  Def. Jaron Miller's Mot. Ex. 10, at 5, 12.

[4] The parties do not dispute that MER paid the non-contingent fee of $25,000 at the July 2014 meeting.  *See* Jaron Miller Mot. Ex. 10, at 7.

during the active phase of [the] project, is consummated within 18 months from the date of [the Letter Agreement's] termination," Plaintiff still would be entitled to payment. *Id.*

In September 2014, Plaintiff prepared a marketing brochure that included information on both MER and WWS. *See* Def. Jaron Miller's Mot. Ex. 14, at 1-21; *see supra* note 3.

In February 2016, Jaron Miller and Wolf, LLC (an entity owned by Joshua Miller) formed MROC, which specializes in oilfield production supply. Def. Jaron Miller's Mot. Ex. 8 (Doc. No. 59-8) at 1. One month later, MROC executed an Asset Purchase Agreement with MER through which MROC acquired substantially all of MER's assets for over $1,600,000. Pl.'s Mot. Ex. 11 (Doc. No. 65-11) at 2-7. Jaron Miller advised Plaintiff of the formation of MROC but did not advise Plaintiff of MROC's purchase of MER's assets. Pl.'s Resp. at 18; *id.* Ex. 3 (Doc. No. 68-3) at 23. Plaintiff then revised the brochure in August 2017 to include MROC in addition to MER and WWS. Def. Jaron Miller's Mot. Ex. 15, at 1-22.

Jaron Miller reviewed and approved both the September 2014 and August 2017 brochures. Pl.'s Mot. Ex. 3 (Doc. No. 65-3) at 5, 23-24. Jaron Miller testified that he "was under the assumption that [he] would compensate [Plaintiff]" for the businesses Plaintiff "successfully sold" in addition to MER, but that he and Plaintiff "never discussed it." *Id.* at 24-25. Jaron Miller further testified that while he "never planned on not compensating [Plaintiff]," he "didn't know what [the] percentage would be exactly," as they "never discussed it," but he "assumed that [they] would probably do 5 percent" as to MROC. *Id.* at 25.

In 2017, Jaron Miller began communicating with potential buyer Applied Industrial Technologies, Inc. ("Applied") and introduced Applied to Plaintiff. Def. Jaron Miller's Mot. Ex. 2 (Doc. No. 59-2) at 14-16; *id.* Ex. 10, at 72-73. Applied visited MROC's and WWS's facilities in October 2017, accompanied by Jaron Miller, Max Dillard, and Stuart Hayashi, among others. Def. Jaron Miller's Mot. Ex. 10, at 17.

In January 2018, Mr. Hayashi reached out to Applied to determine if it was still interested in the businesses. Def. Jaron Miller's Mot. Ex. 19 (Doc. No. 59-19) at 1. Jaron Miller and David Rolens (a representative of the Miller Defendants) later attended a meeting and subsequent telephone call with Applied representatives regarding the potential sale, but Plaintiff was not included in either. Following the call, an Applied representative sent an internal email stating that the "[MROC] group" was "going to proceed without involving their advisor . . . . They've decided they won't be helpful/additive to the process. I think we all agreed with that statement." Def. Jaron Miller's Mot. Ex. 20 (Doc. No. 59-20) at 1-2 (omission in original).

Plaintiff did not communicate with Applied about MER, WWS, or MROC after January 2018. Def. Jaron Miller's Mot. Ex. 11, at 12. In October 2018, MROC and WWS, through counsel, sent Plaintiff a notice of termination of "any brokerage agreement which may exist, whether through oral or alleged written communications," and "any agreement which may be alleged." Def. Jaron Miller's Mot. Ex. 24 (Doc. No. 59-24) at 1.

In March 2019, Applied acquired the Miller Business Defendants for $35,000,000 through an Asset Purchase Agreement. Pl.'s Resp. at 20. Ten thousand dollars of the $35,000,000 was allocated to the purchase of MER's name—which appears to be all that

5

remained of MER following MROC's purchase of its assets—and a separate Bill of Sale was executed for the purchase of that name.  Def. Jaron Miller's Mot. Ex. 2, at 132-33, 141-42.

After learning of the sale, Plaintiff sent an invoice addressed to MER, WWS, MROC, Jaron Miller, and "Miller Supply, Inc. and related entities" for $1,725,000—five percent of the $35,000,000 paid by Applied less the $25,000 non-contingent fee.  Def. Jaron Miller's Mot. Ex. 30 (Doc. No. 59-30) at 1.  To date, no payment has been made.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim.  The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury.  *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).  The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

The Tenth Circuit has explained,

"The filing of cross-motions for summary judgment does not necessarily concede the absence of a material issue of fact. This must be so because by the filing of a motion a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman*, 380 F.2d 323, 324-25 (10th Cir. 1967). Accordingly, "cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007). "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts.'" *Id*.

*Brown v. Perez*, 835 F.3d 1223, 1230 n.3 (10th Cir. 2016) (alteration and citations omitted).

## III.   DISCUSSION

Plaintiff brings the following claims against the Miller Family Defendants and the Miller Business Defendants (collectively, the "Miller Defendants"): breach of contract,

breach of oral contract, tortious breach of contract, fraud, quantum meruit, and constructive trust.  Plaintiff brings a separate claim of tortious interference with contract against Applied.

In its Motion, Plaintiff seeks summary judgment on its claim of breach of contract against the Miller Defendants.  The Miller Family Defendants and Defendants MROC and WWS, in turn, each seek summary judgment on Plaintiff's claims of breach of contract, breach of oral contract, tortious breach of contract, and fraud.[5]  The Miller Family Defendants additionally seek summary judgment on Plaintiff's quantum meruit claim. Defendant MER seeks summary judgment on Plaintiff's claims of breach of oral contract, tortious breach of contract, fraud, and quantum meruit.  Applied seeks summary judgment on Plaintiff's claim of tortious interference with contract.  In its Responses, Plaintiff states that it withdraws its claim of tortious breach of contract.  Accordingly, the Court will enter judgment for the Miller Defendants on that claim.

    A. *Breach of Contract*

      1. <u>Governing Legal Principles</u>

To recover on a breach of contract theory under Oklahoma law, Plaintiff must establish: "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." *Digit. Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843

---

[5] The Miller Defendants' Motions are almost entirely identical.  To avoid the inefficiency of multiple citations to identical material, the Court will cite to the Motion of Defendant Jaron Miller (Doc. No. 59) for content common to all Miller Defendant Motions.  For content unique to one individual defendant or motion, the Court will cite to that specific motion.  Similarly, as Plaintiff has provided identical Responses to all Miller Defendant Motions, the Court will cite solely to Plaintiff's Response to Defendant Jaron Miller's Motion (Doc. No. 68).

(Okla. 2001). Contracts—whether they be written or oral—require (1) parties capable of contracting, (2) free and mutual consent "communicated by each [party] to the other," (3) a lawful object, and (4) sufficient cause or consideration. Okla. Stat. tit. 15, §§ 2, 51. For a contract to be valid, it must be "possible to identify" the parties. *Id.* § 28.

When a dispute arises regarding the intentions of the contracting parties, the parol evidence rule governs the admissibility of evidence. This rule, as codified, provides that "[t]he execution of a contract in writing . . . supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument." Okla. Stat. tit. 15, § 137; *see Mercury Inv. Co. v. F.W. Woolworth Co.*, 706 P.2d 523, 529 (Okla. 1985) (explaining that when a contract is "complete in itself and, as viewed in its entirety, is unambiguous, its language is the only legitimate evidence of what the parties intended" and that "the practical construction of an agreement, as evidenced by the acts and conduct of the parties, is available only in the event of an ambiguity" (emphasis omitted)); *see also* Okla. Stat. tit. 15, § 155 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . .").

The rule does not preclude evidence of false and fraudulent representations offered "to establish fraud in the inducement of the execution of a contract." *First Nat'l Bank in Durant v. Honey Creek Ent. Corp.*, 54 P.3d 100, 104 (Okla. 2002). This is so because the "purpose and effect of the evidence introduced . . . is not to contradict or vary the terms of the written contract, but to show that . . . the fraud was practiced in obtaining [a] signature thereto," and that the contract is therefore voidable. *Id.* (internal quotation marks omitted); *see id.* ("Fraud vitiates everything it touches, and a contract obtained thereby is voidable."

(internal quotation marks omitted)); *Mercury Inv. Co.*, 706 P.2d at 529 n.11 ("Under the terms of §137, referred to generally as the parol evidence rule, testimonial evidence may be admissible to vary or contradict the terms of a written contract when fraud, accident or mistake is relied upon for relief from the binding effect of a contract."); *Thompson v. Estate of Coffield*, 894 P.2d 1065, 1068 (Okla. 1995) ("The parol evidence rule is not applicable in suits for rescission or reformation of contracts." (citing Okla. Stat. tit. 15, § 156)).

Nor does the rule preclude evidence of subsequent modifications to a written contract.  Under Oklahoma law, "[a] contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."  Okla. Stat. tit. 15, § 237. The subsequent oral agreement must be "fully performed," and proof of the executed oral agreement "must be positive, clear and convincing."  *Bredouw v. Wilson*, 256 P.2d 421, 424 (Okla. 1953); *see Dewberry v. Universal C.I.T. Credit Corp.*, 415 P.2d 978, 979 (Okla. 1966) ("An oral agreement modifying a written contract, although established, is ineffective to alter the terms of the written contract until its terms have been fully executed.").

And the rule does not preclude certain evidence in the event that the contract at issue is only partially integrated:

> [E]xcept in the event of accident, fraud or mistake, all previous oral discussions are merged into [and] superseded by the terms of the executed written agreement or instrument, and the instrument cannot be varied or the terms thereof changed by parol evidence.  However, where an oral contract is reduced to writing, and the writing is not a complete and final statement of the entire transaction, parol evidence is admissible to show the full agreement. . . . [W]hen a writing does not purport to disclose the complete contract, or if, when read in the light of the attendant facts and circumstances, it is apparent that it contains only a part of the agreement entered into by the parties, parol evidence is admissible to show what the rest of the agreement

was; but such parol evidence must not be inconsistent with or repugnant to the intention of the parties as shown by the written agreement.

*Bleakley v. Bowlby*, 557 P.2d 894, 896-97 (Okla. 1976) (citations omitted).

> 2. <u>Plaintiff's Request for Summary Judgment on Its Breach of Contract Claim</u>

Plaintiff seeks summary judgment solely on its breach of contract claim against the Miller Defendants. *See* Pl.'s Mot. (Doc. No. 65) at 3, 9-15. Though Plaintiff and MER were the only named parties to the Letter Agreement, Plaintiff contends that all Miller Defendants are nonetheless liable for breach of that agreement.

Plaintiff first contends that—regardless of the Letter Agreement's reference to MER alone—that Agreement at its inception incorporated all of the Miller businesses. Such incorporation is evidenced, Plaintiff argues, by Plaintiff's subsequent inclusion of WWS in its September 2014 brochure and its inclusion of WWS and MROC in its August 2017 brochure, which Jaron Miller "approved" and "never questioned." *Id.* at 10-11. Plaintiff further states that Jaron Miller admitted that Plaintiff was authorized to market WWS and MROC and agreed that Plaintiff should be compensated for marketing those entities. *See id.*

Plaintiff does not articulate the legal theory on which this argument is based. Plaintiff does not argue, for instance, that the Letter Agreement was ambiguous or that it was only a partial integration of the parties' complete agreement. Even if the Court were to construe Plaintiff's argument as one of partial integration—i.e., that the Letter Agreement was "not a complete and final statement of the entire transaction" because it did not name WWS and MROC as parties—the argument would be unavailing. *Bleakley*,

557 P.2d at 896.  For parol evidence to be admissible under this theory, "the evidence offered to supply the omission must not tend to vary or contradict the written portion of the contract." *Wichita Flour Mills Co. v. Guymon Equity Exch.*, 1 P.2d 657, 659 (Okla. 1931).  Here, the evidence at issue does tend to vary the terms of the written agreement by altering the named parties.

Citing the same evidence, Plaintiff argues in the alternative that even if the Letter Agreement did not incorporate all Miller businesses from its inception, the Agreement was later modified by the conduct of Jaron Miller to apply to WWS and MROC.  Plaintiff, however, does not attempt to demonstrate that Jaron Miller's conduct, including his authorization to market WWS and MROC and his approval of the marketing brochures, modified the Letter Agreement in the manner prescribed by title 15, section 237 of the Oklahoma Statutes.  *See* Okla. Stat. tit. 15, § 237 (directing that only a subsequent "contract in writing" or "executed oral agreement" can modify a contract in writing).  Accordingly, Plaintiff has not demonstrated that summary judgment in its favor is appropriate based upon Jaron Miller's conduct.

Plaintiff also argues that MROC is effectively a party to the Letter Agreement because MROC is a "successor-in-interest" to MER by means of the Asset Purchase Agreement between the two companies.  Pl.'s Mot. at 13.  The Asset Purchase Agreement, however, stipulates that MROC "is not taking assignment of or assuming any contracts to which [MER] is a party," and Plaintiff provides no argument, authority, or evidence that controverts this language.  Pl.'s Mot. Ex. 11, at 2; *see also Crutchfield v. Marine Power Engine Co.*, 209 P.3d 295, 300 (Okla. 2009) (noting the "general rule" that "when one

company sells or otherwise transfers all its assets to another company, the successor is not liable for the debts and liabilities of the seller").

Thus, what remains is Plaintiff's request for summary judgment on its breach of contract claim against MER.  Plaintiff contends that the nonpayment of five percent of the $35,000,000 sale of the Miller Business Defendants to Applied constitutes a breach of the Letter Agreement and has resulted in $1,725,000 in damages.  In response, Defendants contend that "Plaintiff did not fully perform its obligations under the Letter Agreement" and that this failure creates a genuine issue of material fact as to MER's liability.  Defs.' Resp. (Doc. No. 67) at 28.  Defendants further argue that Plaintiff has not established damages because it invoiced the Miller Business Defendants and Jaron Miller "only for 5% of the entire transaction and never just for the portion of the purchase price allocated to the sale of MER."  *Id.*

For purposes of Plaintiff's Motion only, the Court assumes without deciding that MER breached the terms of the Letter Agreement by failing to pay a five-percent contingent fee.  Even so, the Court finds that Defendants have demonstrated a genuine issue of material fact as to whether Plaintiff sustained damages as a result of the alleged breach.  Under the terms of the Letter Agreement, "[a]ll non-contingent fees paid to [Plaintiff]," i.e., the initial $25,000, are to be "credited against [the] contingent fee."  Pl.'s Mot. Ex. 1 (Doc. No. 65-1) at 3.  Plaintiff attests that it is due $1,725,000, which, it contends, is five percent of the $35,000,000 purchase price for MER, MROC, WWS, "Miller Supply, Inc. and related entities" less the initial $25,000 non-contingent fee.  Pl.'s Mot. Ex. 9 (Doc. No. 65-9) at 2.  As discussed above, Plaintiff has not demonstrated for

purposes of its Motion that the Letter Agreement applied to any Defendant other than MER. Defendants, in turn, have proffered the testimony of Jaron Miller that MER was sold for only $10,000.  *See* Defs.' Resp. at 7, 15-16 (citing Jaron Miller Dep. (Doc. No. 67-2) at 18-19).  Plaintiff would not be entitled to additional payment on a $10,000 sale, as five percent of $10,000 is less than the $25,000 against which it would be credited.

For these reasons, the Court determines that Plaintiff's request for summary judgment on its breach of contract claim must be denied.

### 3. Miller Family Defendants, WWS, and MROC's Request for Summary Judgment on the Breach of Contract Claim

The Miller Family Defendants and Defendants WWS and MROC all contend that they are entitled to summary judgment on Plaintiff's breach of contract claim because they were not parties to the Letter Agreement.  Plaintiff, in turn, argues that they are parties to the agreement because (1) the Miller Family Defendants each instructed Plaintiff at the July 2014 meeting to sell all the Miller businesses, and (2) Jaron Miller authorized Plaintiff to market WWS and MROC in addition to MER.

Because the parties' discussions at the July 2014 meeting accompanied the execution of the Letter Agreement, Plaintiff must demonstrate that the discussions fall outside of, or within an exception to, the parol evidence rule.  To this end, Plaintiff points to two exceptions.  First, Plaintiff argues that "'where a person enters into a contract with another and causes it to be reduced to writing in the name of another for his benefit, such person may be identified by parol evidence in an action involving the liability of the parties to the contract.'"  Pl.'s Resp. (Doc. No. 68) at 25 (alteration omitted) (quoting *Hutchison Lumber Co. v. Lewis*, 214 P. 721, 724 (Okla. 1923)).  But the case law Plaintiff provides is

inapplicable, as it authorizes parol evidence only "to show that an undisclosed or disclosed principal is doing business under an assumed name or in the name of his agent." *Hutchison Lumber Co.*, 214 P. at 724.  Here, the only defendant that was a named party to the Letter Agreement was MER, and neither Plaintiff's pleading nor its evidentiary submissions suggest that MER executed the Letter Agreement in an agent capacity. *See id.*

Second, Plaintiff contends that the parol evidence rule does not preclude consideration of the parties' discussions at the July 2014 meeting because Plaintiff was induced into the Letter Agreement by fraud. *See* Pl.'s Resp. at 25-26 ("[Plaintiff] would not have entered into the Letter Agreement if it did not incorporate all the Miller Defendants for the sale of all the Miller Businesses.").  As noted, however, evidence of false or fraudulent representations are admissible where "[t]he purpose and effect of the evidence introduced . . . is not to contradict or vary the terms of the written contract," but to obtain "relief from the binding effect of a contract." *First Nat. Bank in Durant*, 54 P.3d at 104 (internal quotation marks omitted); *Mercury Inv. Co.*, 706 P.2d at 529 n.11.  Here, Plaintiff does not seek to introduce evidence of fraud for the purpose of establishing that the Letter Agreement is voidable.  Rather, Plaintiff seeks to introduce such evidence to contradict the terms of the Letter Agreement.  The Court may not consider the evidence for such a purpose.[6]

---

[6] As with Plaintiff's Partial Motion for Summary Judgment, Plaintiff does not expressly raise the issue of partial integration.  And as previously noted, to the extent such an argument can be inferred from Plaintiff's submissions, Plaintiff cannot rely on the theory because the evidence at issue is intended to vary the terms of the written agreement by altering the named parties. *See supra* Section III.a.ii; *Wichita Flour Mills Co.*, 1 P.2d at 659.

As to the evidence that Jaron Miller subsequently authorized Plaintiff to market WWS and MROC and approved marketing materials related to those entities, Plaintiff does not argue or otherwise demonstrate that this conduct is evidence of an "executed oral agreement" such that the terms of the Letter Agreement were modified to include WWS and MROC as parties. *See* Okla. Stat. tit. 15, § 237. And while Plaintiff does argue the existence of an oral contract when discussing its breach of oral contract claim, Plaintiff's arguments fail for the reasons articulated below. *See infra* Section III.b.

Because Plaintiff has failed to point to admissible evidence that creates a genuine issue of fact as to whether WWS, MROC, or the Miller Family Defendants were parties to the Letter Agreement, these defendants are entitled to summary judgment on Plaintiff's breach of contract claim.

### B.  Breach of Oral Contract

The Miller Defendants similarly argue that they are entitled to summary judgment on Plaintiff's breach of oral contract claim because they were not parties to an oral contract with Plaintiff. In response, Plaintiff argues that there was "a mutual understanding and agreement between the parties that [Plaintiff] was marketing all the Miller Businesses pursuant to the terms in the Letter Agreement," pointing again to the July 2014 discussions accompanying the execution of the Letter Agreement and to Jaron Miller's subsequent approval of Plaintiff's marketing of WWS and MROC in addition to MER. Pl.'s Resp. (Doc. No. 68) at 27.

1.   Contemporaneous Discussions

For evidence of a contemporaneous oral agreement to be admissible under the parol evidence rule, the alleged oral contract must be collateral to the Letter Agreement and must not alter or contradict its terms.   *See Am. Perforating Co. v. Okla. State Bank*, 463 P.2d 958, 965 (Okla. 1970) ("[P]roof is admissible of any Collateral, parol agreement or Independent fact which does not interfere with the terms of the written contract," but "[s]uch a collateral parol agreement is not admissible in evidence when the effect is to alter the scope and meaning of the written instrument." (internal quotation marks omitted)); *Hicks v. Simmons*, 271 F.2d 875, 877 (10th Cir. 1959) ("In the absence of fraud, accident or mistake, evidence of a prior or contemporaneous oral agreement is inadmissible to vary the terms of a written contract apparently complete on its face, as to an element or matter with which the written contract deals, or as to a subject so closely bound to [a] matter of written contract that parties would ordinarily be expected to have embodied it therein." (internal quotation marks omitted)).   The Court determines that the alleged oral agreement at the 2014 meeting to "market[] all the Miller Businesses pursuant to the terms in the Letter Agreement" alters the terms and scope of the Letter Agreement and is therefore inadmissible.  Pl.'s Resp. at 27.[7]

---

[7] Even if this were not so, Plaintiff's evidence is insufficient to create a genuine factual dispute as to the formation of an oral agreement at the July 2014 meeting.  Plaintiff relies on Stuart Hayashi's testimony that the Miller Family Defendants "said yes, nodded their heads, absolutely," in response to Jackie Miller's sentiment that Plaintiff "sell all the companies together."  Pl.'s Resp. Ex. 13, at 4-6.  A reasonable jury could not find from the cursory expression of this sentiment, as described by Mr. Hayashi, that the Miller Family Defendants consented to be bound in contract with terms commensurate with those of the Letter Agreement. *See* Okla. Stat. tit. 15, § 66 ("Consent is not mutual unless the parties all agree upon the same thing in the same sense.").  Nor can it be determined from their expression of this sentiment whether such consent would be personal or on behalf of WWS.

2.  Subsequent Conduct and Discussions

Plaintiff has also presented evidence that, after the initial 2014 meeting, Jaron Miller authorized Plaintiff to market WWS and MROC, and that he approved marketing material encompassing WWS and MROC.  The evidence suggests a mutual understanding between Plaintiff and Jaron Miller that Plaintiff should market WWS and (once formed) MROC, but Plaintiff has offered no evidence that these parties discussed or agreed to any specific terms.  Thus, the evidence does not reflect "a definite and unqualified proposal" or that the parties "all agree[d] upon the same thing in the same sense."  *Griffin Grocery Co.*, 32 P.2d at 66; Okla. Stat. tit. 15, § 66; *see also Brown v. Bivings*, 277 P.2d 671, 675 (Okla. 1954) ("The courts cannot make contracts for litigants, and can only enforce them when the parties use language sufficiently definite to express their intention to a reasonable certainty." (internal quotation marks omitted)); Okla. Stat. tit. 15, §§ 2, 51.

Further, to the extent that Plaintiff is arguing that Jaron Miller's conduct constituted an oral agreement to the effect that the Letter Agreement should apply to WWS and MROC, the argument is one of modification to an existing written contract, and Plaintiff must present evidence of a subsequent "executed oral agreement."  *Dewberry*, 415 P.2d at 979; Okla. Stat. tit. 15, § 237.  Plaintiff does not dispute that there were "no discussions between Plaintiff and anyone on behalf of MROC or WWS about the need to amend or

---

*See* Okla. Stat. tit. 15, § 28 ("It is essential to the validity of the contract, not only that the parties should exist, but that it should be possible to identify them."); *Griffin Grocery Co. v. Kingfisher Mill & Elevator Co.*, 32 P.2d 63, 66 (Okla. 1934) (explaining that contracts require "a definite and unqualified proposal by one party, which was unconditionally and without qualification accepted by the other party," and that "no contract can be said to have been created where their minds have not agreed on one and [the] same thing" (internal quotation marks omitted)).

modify the Letter Agreement to include MROC or WWS." Def. Jaron Miller's Mot. at 13; *see* Pl.'s Resp. at 10. Nor has Plaintiff demonstrated that it fully performed the alleged oral agreement, as required under section 237. *See* Pl.'s Resp. at 14 (stating that Plaintiff does not dispute that it did not "assist in developing an acquisition structure" for MROC or WWS); Def. Jaron Miller's Mot. at 20; *id.* Ex. 9, at 1.

In sum, there is no evidence of a specific offer with identifiable parties and terms and no evidence of any defendant's consent to enter into such an agreement. Nor is there evidence from which a reasonable factfinder could infer an executed oral agreement by which the Letter Agreement was modified to encompass parties not named therein. Accordingly, the Court determines that there are no genuine disputes of material fact and that the Miller Defendants are entitled to judgment as a matter of law on this claim.

### C. Fraud

In its pleading, Plaintiff contends that the Miller Defendants committed fraud by "allow[ing] [Plaintiff] to continue to perform under the Agreement" and instructing Plaintiff to "market the sale" of WWS and MROC when the Defendants "had no intention of paying" for Plaintiff's services. Compl. (Doc. No. 1) ¶¶ 55-56; *see* Pl.'s Resp. at 28 (stating that the basis of its fraud claim is that the Miller Defendants "induced Plaintiff to expend significant time, effort and expense to market the various businesses owned and operated by the Miller Defendants").

Fraud is "a generic term with multiple meanings" and can be categorized as either actual or constructive. *Manokoune v. State Farm Mut. Auto. Ins. Co.*, 145 P.3d 1081, 1086 (Okla. 2006) (internal quotation marks omitted). Actual fraud is "the intentional

misrepresentation or concealment of a material fact which substantially affects another person," whereas constructive fraud "may be defined as any breach of a duty which gains an advantage for the actor by misleading another to his prejudice." *Id.* at 1086-87 (omission and internal quotation marks omitted). Constructive fraud "does not necessarily involve any moral guilt, intent to deceive, or actual dishonesty of purpose." *Id.* (internal quotation marks omitted).[8] Whether actual or constructive, "[f]raud is never presumed and each of its elements must be proved by clear and convincing evidence." *Simon v. Metro. Prop. & Cas. Ins. Co.*, No. CIV-08-1008-W, 2014 WL 12479649, at *6 (W.D. Okla. April 17, 2014). "Although the issue of fraud is generally a question of fact, summary judgment is appropriate where, under the uncontroverted facts, a plaintiff fails to demonstrate the viability of [its] claim." *PWB Dev., L.L.C. v. Acadia Ins. Co.*, No. CIV-17-387-R, 2018 WL 4088793, at *5 (W.D. Okla. Aug. 27, 2018) (alteration and internal quotation marks omitted); *see also Specialty Beverages*, 537 F.3d at 1181.

The Miller Defendants are entitled to summary judgment on Plaintiff's fraud claim insofar as it is premised on a theory of actual fraud, as Plaintiff has presented no evidence of an *intent* to misrepresent or conceal a material fact. Even if the parties did have an understanding at the July 2014 meeting that the terms of the Letter Agreement would apply to all Miller businesses, including WWS, "the only proof in [the] record upon which [Plaintiff] can predicate an intent not to keep the promises made is the fact that [the alleged]

---

[8] Oklahoma recognizes multiple theories that would support a fraud claim, some statutorily based and others common-law based. *See Specialty Beverages, L.L.C. v. Pabst Brewing Co.*, 537 F.3d 1165, 1180, 1182 n.14 (10th Cir. 2008); *Faulkenberry v. Kan. City S. Ry. Co.*, 602 P.2d 203, 206 (Okla. 1979). As no party has expressly invoked a specific statute, the Court has analyzed Plaintiff's fraud claim under Oklahoma's common-law theories.

promises were not kept." *Roberts v. Wells Fargo AG Credit Corp.*, 990 F.2d 1169, 1173 (10th Cir. 1993) (alteration and internal quotation marks omitted). And the failure to keep a promise is not, in and of itself, proof of intent to deceive. *See Citation Co. Realtors, Inc. v. Lyon*, 610 P.2d 788, 790 (Okla. 1980) ("There is a wide distinction between the nonperformance of a promise and a promise made mala fide, only the latter being actionable fraud.").

Insofar as Plaintiff's fraud claim is premised on a theory of constructive fraud, the Court determines that only Defendants Leslie Miller and Joshua Miller have demonstrated entitlement to summary judgment. As relevant here, Plaintiff must present evidence that (1) Defendants owed it "a duty of full disclosure," (2) Defendants "failed to disclose a fact to [P]laintiff," (3) the "omission was material," (4) Plaintiff relied on the material omission, and (5) Plaintiff "suffered damages as a result." *Specialty Beverages*, 537 F.3d at 1180-81 (internal quotation marks omitted). The requisite duty is not restricted to a general fiduciary duty, but "may arise if a party selectively discloses facts that create a false impression." *Id.* at 1181; *see Hubbard v. Bryson*, 474 P.2d 407, 410 (Okla. 1970) ("If on account of peculiar circumstances there is a positive duty on the part of one of the parties to a contract to speak, and he remains silent to his benefit and to the detriment of the other party, the failure to speak constitutes fraud."); *Uptegraft v. Dome Petroleum Corp.*, 764 P.2d 1350, 1353-54 (Okla. 1988) ("Although a party may keep absolute silence and violate no rule of equity, . . . if he volunteers to speak and to convey information which may influence the conduct of the other party, he is bound to disclose the whole truth."); *Roberts Ranch Co. v. Exxon Corp.*, 43 F. Supp. 2d 1252, 1259 n.12 (W.D. Okla. 1997).

Regarding Defendants Leslie Miller and Joshua Miller, the only relevant evidence Plaintiff has presented is Mr. Hayashi's testimony that they were present at the July 2014 meeting and that, when Jackie Miller communicated to Plaintiff that he wanted Plaintiff to "[m]arket all the companies together," they "said yes, nodded their heads, absolutely." Pl.'s Resp. Ex. 13, at 4.  Even when construed in Plaintiff's favor, however, this evidence does not demonstrate that these defendants selectively disclosed facts creating a false impression or otherwise had a duty of full disclosure.  Mr. Dillard testified that Jackie Miller was the individual who gave Mr. Dillard the information that led him to name MER in the Letter Agreement.  *See* Def. Jaron Miller's Mot. Ex. 10, at 5.  And Plaintiff does not dispute that Leslie and Joshua Miller were not involved in subsequent discussions with Plaintiff.  *See* Def. Joshua Miller's Mot. (Doc. No. 60) at 12; Def. Leslie Miller's Mot. (Doc. No. 61) at 12.  Thus, Plaintiff has presented only a scintilla of evidence against these two Defendants, which is insufficient to allow a reasonable inference of their liability.  *See Liberty Lobby*, 477 U.S. at 252; *Roberts*, 990 F.2d at 1173 (explaining that submission of the issue of fraud to the jury is appropriate only when "facts are produced from which an *irresistible deduction of fraud reasonably arises*" (internal quotation marks omitted)).

As to Defendant Jaron Miller, Plaintiff has produced evidence that Jaron Miller knew that MER was the only Miller entity named in the Letter Agreement, that he nonetheless approved Plaintiff's simultaneous marketing of MER, WWS, and MROC, that he authorized Plaintiff to market MROC in the same manner as MER once the entity was formed, and that he did not inform Plaintiff of MROC's purchase of MER's assets.  A reasonable jury could find that, under these circumstance, Jaron Miller owed Plaintiff a

duty to disclose that the Millers would not compensate Plaintiff for its marketing of WWS and MROC in the amount specified in Plaintiff's Letter Agreement with MER, and that he failed to make this disclosure.  As to the elements of materiality, reliance,[9] and damages, Plaintiff has produced evidence that Plaintiff expended time and resources to create marking material for WWS and MROC due to Plaintiff's understanding that it would be paid five percent of the transaction value of any subsequent sale.

The Miller Defendants argue that Plaintiff's fraud claim is not viable because it is not "sufficiently distinct" from Plaintiff's breach of contract claim.  *See* Def. Jaron Miller's Mot. at 28 (citing *McGregor v. Nat'l Steak Processors, Inc.*, 11-CV-0570, 2012 WL 314059 (N.D. Okla. Feb. 1, 2012)).  Yet, Plaintiff's fraud claim is premised, in part, on the theory that the Miller Defendants "failed to correct [Plaintiff's] justifiable belief" that it would receive a commission for its work.  Pl.'s Resp. at 28.  This theory is not dependent upon the existence of a contract and is therefore sufficiently distinct to support an independent claim of fraud.  *See Roberts*, 990 F.2d at 1173; *Specialty Beverages*, 537 F.3d at 1180 & n.12.

Accordingly, Plaintiff has presented sufficient evidence to submit its theory of constructive fraud to the jury as to Jaron Miller.  As Defendants have not challenged Plaintiff's implicit argument that liability against Jaron Miller arising under this theory can

---

[9] The Miller Defendants cite *Hussein v. Duncan Regional Hospital, Inc.*, No. CIV-07-439-F, 2007 WL 3231693 (W.D. Okla. Oct. 30, 2007), for the proposition that reliance on "general conduct" is not "the specific type of reliance required" in a fraud claim.  *Id.* at *3. The *Hussein* decision, however, was analyzing a claim for actual fraud and was merely explaining that "fraud requires the plaintiff to act (or fail to act) specifically in reliance *on the misrepresentations per se*," rather than on promises, agreements, or general conduct not containing a misrepresentation.  *Id.*

be imputed to the Miller Business Defendants, the Court will deny summary judgment on the constructive fraud theory as to those entities as well.

### D. Quantum Meruit

Plaintiff brings a claim for quantum meruit against each Miller Defendant.  The Miller Family Defendants and MER now seek summary judgment on this claim.

Under Oklahoma law, quantum meruit is a "legal action grounded on a promise that the defendant would pay to the plaintiff for his services as much as he should deserve." *McCurdy Grp., LLC v. Am. Biomedical Grp., Inc.*, 9 F. App'x 822, 827 (10th Cir. 2001) (alteration and internal quotation marks omitted).  Generally, when "a person performs services without a written contract, the law implies an agreement to pay what is reasonable, meaning thereby what he reasonably deserves."  *Id.* (internal quotation marks omitted). Relief under a quantum meruit theory may be permitted despite the existence of an express contract so long as the quantum meruit claim "involve[s] obligations outside the scope of the express contract."  *Id.*  To establish a claim of quantum meruit, a plaintiff must show that "(1) Plaintiff rendered valuable services to Defendant with a reasonable expectation of being compensated, (2) Defendant knowingly accepted the benefit of the services, and (3) Defendant would be unfairly benefited by the services if no compensation were paid to Plaintiff."  *Big Hunt Media, Inc. v. Smith & Wesson Corp.*, No. CIV-18-299-R, 2018 WL 3625842, at *3 (W.D. Okla. July 30, 2018) (internal quotation marks omitted).

MER argues that it is entitled to summary judgment on Plaintiff's quantum meruit claim because the services Plaintiff provided to MER were within the scope of the Letter Agreement.  *See* Def. MER's Mot. (Doc. No. 64) at 23-24.  Plaintiff does not address this

argument in its Response.  Based upon the evidentiary material presented, the Court finds that there is no genuine factual dispute on this issue and MER is entitled to judgment as a matter of law.

As to the Miller Family Defendants, each argues that he or she is entitled to summary judgment because Plaintiff "provided marketing services to MER, MROC, and WWS" rather than to the Miller Family Defendants in their individual capacities.  Def. Jaron Miller's Mot. at 35.  According to the Miller Family Defendants, "Plaintiff's attempt to pierce the corporate veil of MROC or WWS to pursue [the Miller Family Defendants] in [their] individual capacit[ies] prior to obtaining judgment against the companies is improper" under the Oklahoma General Corporation Act.  *Id.* at 33-35 (citing Okla. Stat. tit. 18, § 1124(B)).[10]  Plaintiff responds that the Miller Family Defendants are the owners of the Miller Business Defendants and that, as such, they personally benefited from Plaintiff's services.  *See* Pl.'s Resp. at 32-33.[11]

For purposes of Plaintiff's quantum meruit claim, the valuable service alleged is the marketing of WWS and MROC.  Thus, Plaintiff "rendered valuable services" (if at all) to the Miller Family Defendants only in their capacities as shareholders of WWS and/or

---

[10] The Miller Family Defendants additionally raise this argument as to Plaintiff's contract claims.  *See id.* at 34; Def. Jaron Miller's Reply (Doc. No. 79) at 11.  Because the Court has granted summary judgment on separate bases on those claims, it need not reach the issue.

[11] Plaintiff objects that the Miller Family Defendants failed to specifically link their argument to any particular cause of action and requests that the Court therefore disregard the argument.  *Id.* at 32.  Contrary to Plaintiff's assertion, the Miller Family Defendants did specify that the argument applied to Plaintiff's "claims based in contract or quasi-contract against individual Miller defendants," and to Plaintiff's claim of quantum meruit. Def. Jaron Miller's Mot. at 34-35.  Thus, the Court denies Plaintiff's request.

members of MROC, and whatever benefit the Miller Family Defendants enjoyed from these services was through that status. *Big Hunt Media*, 2018 WL 3625842, at *3 (internal quotation marks omitted); *see* Def. Jaron Miller's Mot. at 10.  Under these circumstances, a claim for quantum merit against the Miller Family Defendants would controvert Oklahoma law prohibiting lawsuits against shareholders of corporations and members of limited liability companies for the debts and liabilities of their companies. *See* Okla. Stat. tit. 12, § 682(B)-(C); *id.* tit. 18, §§ 1124(b), 2022.  The Miller Family Defendants are therefore entitled to summary judgment on this claim.

### E. Tortious Interference with Contract

By separate motion, Defendant Applied seeks summary judgment on the sole claim raised against it: tortious interference with the Letter Agreement "and/or an oral contract" between Plaintiff and the Miller Defendants.  Compl. ¶ 66.  To establish a claim for tortious interference with contract under Oklahoma law, Plaintiff must prove that "(1) the interference was with an existing contractual . . . right; (2) such interference was malicious and wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage." *Wilspec Techs., Inc. v. DunAn Holding Grp. Co.*, 204 P.3d 69, 74 (Okla. 2009).

In its Motion, Applied argues that Plaintiff cannot present evidence that it acted maliciously or wrongfully or that it proximately caused Plaintiff's alleged damages. *See* Def. Applied's Mot. (Doc. No. 58) at 9-17.  According to Applied, the decision to exclude Plaintiff from the transaction process was made independently by the Miller Defendants rather than at the direction of Applied.  Plaintiff, in turn, argues that Applied actively

"persuad[ed] the Miller Defendants to breach the Agreement by making them believe that a deal would not get done unless [Plaintiff] was removed from the equation."  Pl.'s Resp. to Def. Applied's Mot. (Doc. No. 66) at 17.

In support of its tortious interference claim, Plaintiff points to an email between Applied employees Jim Jeffiers and Jeff Jackson in which Mr. Jackson writes that he would "give Stuart [Hayashi] a buzz [that] afternoon to touch base," regarding a potential meeting between Jaron Miller, David Rolens (a representative of the Miller Defendants), and Applied.  *Id.* Ex. 15 (Doc. No. 66-15) at 2.  Mr. Jeffiers responded, "I am meeting with them at Noon tomorrow."  *Id.*  Plaintiff asserts that no one at Applied notified Plaintiff of the prospective meeting because Mr. Jeffiers' response "indicat[ed] to Jackson that he ha[d] everything under control and there [was] no need to let [Plaintiff] know of the meeting." Pl.'s Resp. to Def. Applied's Mot. at 17.  Plaintiff also points to Jaron Miller's testimony that either Jim Jeffiers or Jeff Jackson "definitely said . . . that they would prefer to just work with [him]" and that Applied "preferred to move on forward without [Plaintiff]." Pl.'s Resp. to Def. Applied's Mot. Ex. 3 (Doc. No. 66-3) at 4, 16.  Jaron Miller testified that he "didn't have any option" but to take Plaintiff out of the process because he "didn't feel like [they would] get a deal done" if Plaintiff remained involved.  *Id.* at 13.

Though Plaintiff's claim is premised on the theory that Applied caused the Miller Defendants to breach their contractual obligations, the only contractual obligation of any Miller Defendant, and the only obligation allegedly breached, was the payment for services Plaintiff had performed prior to its exclusion from the transaction process.  Indeed, Plaintiff has consistently argued that its damages stem from services it provided prior to its

exclusion, which presupposes that payment for these services was not contingent upon its continued involvement.[12]   *See* Compl. Ex. 1 (Doc. No. 1-1) at 4 (Letter Agreement provision requiring payment even when a transaction is consummated after termination of the Agreement).  Thus, even if Applied did cause the Miller Defendants to exclude Plaintiff from the remainder of the transaction process by voicing its preference to work directly with Jaron Miller, Plaintiff has provided no evidence tying Applied to the Miller Defendants' decision not to pay Plaintiff for the services already rendered.  Nor does Plaintiff dispute that Applied "did not prevent the Miller Defendants from fulfilling their obligations under the contract with [Plaintiff]."  Def. Applied's Mot. at 7-8; *see* Pl.'s Resp. to Def. Applied's Mot. at 9.

For these reasons, the Court determines that a reasonable jury could not find that Applied induced the Miller Defendants' nonpayment or otherwise proximately caused Plaintiff's damages.

CONCLUSION

For the foregoing reasons, the Court ORDERS that

1.  Plaintiff's Motion for Partial Summary Judgment (Doc. No. 65) is DENIED;

2.  Defendant Applied's Motion for Summary Judgment (Doc. No. 58) is GRANTED;

3.  The Motions for Summary Judgment of Defendants Jaron Miller (Doc. No. 59), Joshua Miller (Doc. No. 60), and Leslie Miller (Doc. No. 61), and the Motions

---

[12] Plaintiff does not argue that Applied interfered with Plaintiff's own performance of the contract.  *See Wilspec Techs., Inc.*, 204 P.3d at 71-74.

for Partial Summary Judgment of Defendants MROC (Doc. No. 62), WWS (Doc. No. 63), and MER (Doc. No. 64) are GRANTED IN PART and DENIED IN PART as follows:

a.  Summary judgment is GRANTED as to all Miller Defendants on Plaintiff's claim of tortious breach of contract;

b.  Summary judgment is GRANTED as to Defendants Jaron Miller, Joshua Miller, Leslie Miller, WWS, and MROC on Plaintiff's claim of breach of contract;

c.  Summary judgment is GRANTED as to all Miller Defendants on Plaintiff's claims of breach of oral contract and actual fraud;

d.  Summary judgment is GRANTED as to Defendants Joshua Miller and Leslie Miller on Plaintiff's claim of constructive fraud;

e.  Summary judgment is DENIED as to Defendants Jaron Miller, MER, WWS, and MROC on Plaintiff's claim of constructive fraud; and

f.  Summary judgment is GRANTED as to Defendants MER, Jaron Miller, Joshua Miller, and Leslie Miller on Plaintiff's claim of quantum meruit.

With the issuance of this decision, the following claims remain: (1) Plaintiff's claim of breach of contract against Defendant MER; (2) Plaintiff's claim of constructive fraud against Defendants Jaron Miller, MER, WWS, and MROC; (3) Plaintiff's claim of quantum meruit against Defendants WWS and MROC; and (4) Plaintiff's claim of constructive trust against the Miller Defendants.

IT IS SO ORDERED this 30th day of September, 2021.

CHARLES B. GOODWIN
United States District Judge